UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALBERTO CORONA-SALDANA,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, et al.,<br><br>Respondents. | Case No. 2:26-cv-01347-TMC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## I.   INTRODUCTION AND BACKGROUND

Petitioner Alberto Corona-Saldana, a 57-year-old citizen of Mexico, entered the United States without inspection approximately 26 years ago. Dkt. 1 ¶ 1; Dkt. 1-3 at 60.  Since then, he has worked, helped support his mother who is a lawful permanent resident, and has had no criminal history. Dkt. 1 ¶ 2. In 2005, he filed a "Petition for Alien Relative" (I-130 form) apparently seeking to obtain legal status; the status of this petition is unclear. Dkt. 1-3 at 61. In November 2025, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner in Bellevue, Washington, and detained him in the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  *Id*.  ICE initiated removal proceedings; the initial decision by an immigration judge ("IJ") ordered removal and Petitioner has appealed that decision to the Board of Immigration Appeals ("BIA). Dkt. 7 ¶¶ 7, 12.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

On March 19, 2026, Petitioner had a bond hearing before an IJ. Dkt. 1-3 at 50–51; Dkt. 7 ¶ 14. Petitioner was represented by counsel who filed a brief supported by numerous exhibits, including letters of support from Petitioner's neighbors, co-workers, niece and other people attesting to his good character and ties to the community. Dkt. 1-3 at 3–42. The IJ recorded his decision on a form that allowed him to check various boxes indicating the basis of the decision. *Id.* at 50–51. The IJ denied bond and checked boxes indicating two bases for his decision: first, that he lacked jurisdiction because Petitioner was mandatorily detained under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and second, in the alternative, if jurisdiction existed, Petitioner was detained because he failed to show he was not a flight risk. *Id.* The form does not ask the IJ to supply reasons for the decision, and the IJ did not provide any, so it is unknown how the IJ evaluated the evidence presented by Petitioner. Notwithstanding this absence of reasoning, in a declaration filed by Respondents, an ICE Deportation Officer states that the IJ "denied bond for Petitioner being a flight risk due to him trying to flee [Border Patrol] and not having not [sic] applied for any immigration benefit until recently." Dkt. 7 ¶ 14. However, this explanation is not reflected elsewhere in the record, the officer does not explain the source of this information, and the Respondents do not even mention it in their response.

Petitioner had a second bond hearing on April 27, 2026. *Id.* ¶ 16. The IJ denied bond again, but this time based the decision solely on lack of jurisdiction, as reflected in a one-paragraph decision, which Respondents failed to provide but Petitioner attached as an exhibit to his traverse. Dkt. 8-1 at 3; *see* Dkt. 6 at 3.

On April 20, 2026, Petitioner filed this petition for a writ of habeas corpus. Dkt. 1. On May 5, the Federal Respondents filed a return to the habeas petition, arguing that bond was properly denied because Petitioner's detention is mandatory under 8 U.S.C. § 1225(b), and in the alternative, that the IJ had found Petitioner to be a flight risk. Dkt. 6 at 4–5. On May 11,

Petitioner filed his traverse. Dkt. 8. On May 26, the Clerk of Court reassigned this case to the undersigned, *see* Dkt. 9, and the habeas petition is now ready for review. For the reasons set forth below, the Court GRANTS the petition for writ of habeas corpus.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

### A.    Petitioner Is Detained Under 8 U.S.C. § 1226(a)

As an initial matter, the Court addresses whether Petitioner is detained mandatorily under 8 U.S.C. § 1225(b)(2), as found by both IJs who presided over Petitioner's bond hearings and as argued by Respondents in their return, or under 8 U.S.C. § 1226(a), which allows an IJ to exercise discretion and release certain detainees pending immigration proceedings. *See Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025).

On September 30, 2025, this Court granted summary judgment to members of a certified Bond Denial Class, defined to include the following individuals:

> All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

*Rodriguez Vazquez,* 802 F. Supp. 3d at 1336. The Court issued the following declaratory relief:

> The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

*Id.*

Although Petitioner does not expressly refer to the Court's decision in *Rodriguez Vazquez*, this matter falls squarely within its parameters. Without specifically referring to the three prongs of *Rodriguez Vazquez*, Petitioner challenges the validity of his current detention under 8 U.S.C. § 1225(b) and states facts that demonstrate his membership in the *Rodriguez Vazquez* class. It is undisputed that at some point in 2000, Petitioner entered the United States without inspection, was not apprehended upon arrival, and is not subject to detention under any of the disqualifying provisions set forth in *Rodriguez Vazquez*. *See* Dkt. 1 ¶¶ 1–3, 23–24. The Court determined that similarly situated petitioners in *Rodriguez Vazquez* were entitled to a bond hearing, holding that the INA does not require mandatory detention of noncitizens who meet the three prongs set forth in the definition of class membership. *See* 802 F. Supp. 3d at 1336. Thus, the Court concludes that Petitioner is detained under 8 U.S.C. § 1226(a), and the IJs had jurisdiction to release Petitioner pending resolution of his underlying immigration proceedings.

### B.    Prudential Exhaustion Is Not Required

A determination by an IJ whether a noncitizen presents a danger to the community or risk of flight is reviewable in habeas as a mixed question of fact and law. *See Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024). But before the Court addresses this underlying question, Petitioner must first clear a procedural hurdle: exhaustion of remedies. Ordinarily, before turning to federal court, a litigant must first pursue all options available through the appropriate administrative agency. *See, e.g., Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

Respondents argue that Petitioner has failed to exhaust his administrative remedies because his appeal of the bond denial to the BIA remains pending, so the Court should deny his

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

petition on prudential exhaustion grounds. Dkt. 6 at 4–7. Petitioner contends that the Court should waive any exhaustion requirement for several reasons, but most convincingly, because exhaustion would be futile. Dkt. 8 at 4; Dkt. 1 ¶ 11.

In a habeas proceeding, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). To determine whether a petitioner must exhaust his administrative remedies, a court typically applies three factors set forth in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007): "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id*. But even if these factors weigh in favor of exhaustion, several exceptions permit a court to waive the requirement: Exhaustion may be excused "where administrative remedies are inadequate or not efficacious, *pursuit of administrative remedies would be a futile gesture*, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (emphasis added); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (citation modified)).

Here, the Court need not go through the exercise of applying the *Puga* factors because even if they weighed in favor of exhaustion, requiring Petitioner to wait until his appeal to the BIA is resolved would unreasonably prolong his detention[1] and very likely prove to be futile. Numerous federal courts across the country, including in this district, have found that an

---

[1] As this Court observed in *Rodriguez Vazquez*: "In 2024 . . . data showed an average processing time of 204 days for [BIA] bond appeals." 802 F. Supp. 3d at 1307.

appeal to the BIA of the jurisdictional issue that was the primary basis here for the denial of bond is futile, because the BIA continues to adhere to the position it adopted in *Matter of Hurtado*. *See, e.g., Segura Serrano, v. Scott, et al.*, Case No. 2:26-CV-01268-LK, 2026 WL 1469639, at *3–4 (W.D. Wash. May 26, 2026); *see also Jacobo Ramirez v. Noem*, 817 F. Supp. 3d 1037, 1050 (D. Nev. 2025) (finding exhaustion futile because the BIA would uphold the petitioner's bond pursuant to *Hurtado*).

Despite this apparent futility, Respondents argue that requiring exhaustion would "create[] an appellate record" for a later habeas petition. Dkt. 6 at 7. Respondents also rely for support on *Aden v. Nielson*, Case No. 2:18-CV-1441-RSL, 2019 WL 5802013 (W.D. Wash. Nov. 7, 2019). *Id.* at 6. Both arguments are unavailing.

First, Respondents do not explain how waiting for the BIA to rule on Petitioner's bond appeal could create a *helpful* appellate record. Their argument appears to hinge on the theoretical possibility that the BIA will examine the alternate basis for the denial of bond—the IJ's finding, devoid of reasons, that petitioner is a flight risk. But this possibility seems remote. As the court observed in *Segura Serrano*: "[I]t is very likely that the BIA will have no occasion to review the merits of the IJ's bond determination. The principal basis upon which the IJ denied bond is the BIA's binding decision in *Matter of Yajure Hurtado* . . . . It would be quite surprising if, despite its large backlog, the BIA decided to review the IJ's decision on the merits rather than simply adhering to *Yajure Hurtado* by affirming based on lack of jurisdiction." 2019 WL 5802013 at *4.

Second, the decision in *Aden* is inapposite. In *Aden*, the "Petitioner allege[d] that the IJ impermissibly relaxed the government's evidentiary burden in his bond hearing," leading to an erroneous conclusion that he was a danger to the community. 2019 WL 5802013 at *1. Petitioner filed his habeas petition before his appeal to the BIA had been resolved. *Id.* The *Aden* court found that exhaustion was required because the petitioner had failed to show that his appeal to

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

the BIA would be futile. *Id*. at *3. To show futility, the court required petitioner to demonstrate "that the BIA has a specific policy of affirming IJs' bond decisions . . . ." *Id*.  Here, by contrast, there exists such a specific policy: the BIA's own decision in *Matter of Hurtado*, from which it shows no signs of retreating. Thus, unlike the petitioner in *Aden*, Petitioner here has met his burden of showing that appellate review of his bond denial would be futile.

In sum, considering the futility of any bond appeal to the BIA under these circumstances, "exhaustion is not required." *Vasquez-Rodriguez*, 7 F.4th at 896. The Court now turns to the question of whether the IJs abused their discretion in denying bond.

### C.    The IJs Abused Their Discretion by Denying Bond

The Court's review of a bond determination by an IJ is limited. While factual questions are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). While a court may not review underlying factual determinations such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" it may review mixed questions of law and fact, "even when [they] are primarily factual[.]" *Id*. at 782–84 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024)). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id.* at 785.

Under BIA precedent, to determine whether a noncitizen is a danger to the community or a risk of flight, an IJ is supposed to weigh nine factors: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the

noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Id*. at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

An IJ's application of the above standard "is malleable and involves agency discretion," but a federal court can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id*. (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano v. Hernandez*, --- F. Supp. 3d ---, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) (finding jurisdiction to review IJ's bond denial based on flight risk finding). Accordingly, Petitioner's allegation in his habeas petition—that the initial IJ abused his discretion when he determined that Petitioner was a flight risk despite facts that strongly suggested otherwise—presents a mixed question of fact and law that the Court has jurisdiction to review.[2]

The burden of proof and who bears it at a bond hearing before an IJ appear to be unresolved legal issues in the Ninth Circuit. *See Segura Serrano*, 2026 WL 1469639 at *7 (citing cases). Assuming, however, that the Petitioner bears the burden of proof by a preponderance of the evidence, the Court finds that the IJ abused his discretion in this case, for the simple reason that the record does not show that the IJ exercised *any* discretion in denying bond.

---

[2] The second bond hearing—at which the IJ denied Petitioner bond purely on the ground that he lacked jurisdiction—presents a question of law that this Court addressed in *Rodriguez Vazquez*, 802 F. Supp. 3d at 1336, and need not re-examine here.

Petitioner presented ample evidence to the IJ that he is not a flight risk and that he has strong ties to the United States. *See* Dkt. 1-3 at 1–59. First, he continues to pursue multiple avenues through the immigration system to remain here. *Id.* at 10–18. Second, he has many family members in the United States, including his mother for whom he provides care. *Id.* at 22. He also has a U.S. citizen sister who has expressed willingness to support him and ensure that he attends all future immigration proceedings. *Id.* at 6, 31. Third, Petitioner has established a presence in the community as reflected in the letters submitted by his neighbors, sister, nieces, and former co-workers. *Id.* at 30. And to mitigate any risk that he might flee, Petitioner's family has offered to post a bond in the approximate amount of $3,500, to ensure his compliance with future hearings and court dates. Dkt. 1-3 at 7.

In denying Petitioner's bond request because he was a flight risk, the IJ did not discuss any of the above evidence, even though counsel for Petitioner had presented it. There is nothing in the record showing that the IJ found it lacked credibility. It is telling that Respondents do not attempt to explain or justify the IJ's decision and instead focus their argument entirely on the exhaustion question. The only factor that seems to weigh against Petitioner is the statement by the Deportation Officer in his declaration that the IJ "denied bond for Petitioner being a flight risk due to him trying to flee [Border Patrol] and not having not applied [sic] for any immigration benefit until recently." Dkt. 7 ¶ 14. This assertion is not supported by any documentation or recording of the IJ's decision, and the Deportation Officer does not provide the basis for his claimed knowledge. While the record does reflect that after being stopped by ICE agents, Petitioner "attempted to flee on foot," Dkt. 1-3 at 61, there is no persuasive evidence that this was the reason for the IJ's decision. Nor could reliance on this fact alone, weighed against the abundance of evidence presented by Petitioner, demonstrate a meaningful application of the *Guerra* standard. As the *Segura Serrano* Court pointed out: "[B]y the time of [Petitioner's]

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

arrest, there had been widespread news coverage of excessive force by ICE in encounters with immigrants; whether true or not, this could certainly have resulted in reasonable apprehension on [Petitioner's] part." 2019 WL 5802013 at *8.

In sum, the Court concludes that the IJ did not "correctly appl[y] the [legal] standard to a given set of facts," *see Martinez*, 124 F.4th at 783. The IJ failed to provide a rationale for his finding of flight risk and failed to acknowledge, much less weigh, the ample evidence presented by Petitioner. By failing to accord Petitioner the process due to him, the IJ abused his discretion and violated Petitioner's Fifth Amendment rights. *See Minango v. Bondi*, No. 2:26-CV-00235-ART-BNW, 2026 WL 1257028, at *4 (D. Nev. May 6, 2026) (finding a due process violation where the IJ "failed to apply the correct legal standard as required by due process"); *Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) ("Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." (collecting cases)).

## IV.    CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1.    The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2.    Within ONE day of this Order, Respondents must release Petitioner Alberto Corona-Saldana from custody with reasonable conditions of supervision.

3.    Upon his release, Respondents must return to Petitioner Alberto Corona-Saldana any personal property, including any personal identification document (other than a passport) and any employment authorization document.

4.    Respondents shall file a status report by June 3, 2026, confirming that Petitioner Alberto Corona-Saldana has been released.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 10

Dated this 1st day of June, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 11